IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-0071-WJM-STV

PATRICIA HARRIS,

    Plaintiff,

v.

HON. ROBERT WILKIE of DOD, SECRETARY DEPARTMENT OF VETERANS AFFAIRS, in his Official Capacity,[1]

    Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S EARLY MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Patricia Harris ("Harris") sues the Honorable Robert Wilkie, Secretary of the Department of Veterans Affairs, in his official capacity ("the VA"), alleging disability discrimination under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 791 *et seq.*, age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and retaliation for exercising her rights under those statutes. (ECF No. 28.)

Currently before the Court is the VA's Motion for Early Partial Summary Judgment. (ECF No. 30.) *See also* WJM Revised Practice Standard III.E.2 (governing early summary judgment motions). This motion argues that Harris failed to exhaust her administrative remedies as to her claims for disability discrimination and retaliation (her

---

[1] The parties' pleadings identify Wilkie as the acting secretary of the Department of Veterans Affairs, but he has since been confirmed as secretary. The Court has updated its caption accordingly, and the parties should do so as well.

first and third claims for relief). For the reasons explained below, the Court will grant this motion as to Harris's first claim for relief, and grant it in part and deny it in part as to her third claim for relief.

## I. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. FACTUAL BACKGROUND

Summary judgment motions turn on undisputed facts. However, the VA's summary judgment motion turns on a subset of facts that make little sense out of context. Accordingly, the Court will first summarize Harris's allegations. The Court derives the following from Harris's Second Amended Complaint. (ECF No. 28.) The

Court's summary of Harris's allegations is not meant to imply approval of them, nor that the allegations are uncontested.

Harris was born either in 1948 or 1953—the Second Amended Complaint alleges both. (*Id.* ¶¶ 10, 72.) In September 2015, Harris became a "Nurse Manager" at a VA "Community Living Center" in Denver. (*Id.* ¶ 11.) In May 2016, non-party Piper Knight became "Chief Nurse" at that facility. (*Id.* ¶ 12.) "[S]hortly after [Knight's] arrival, [she] told the Plaintiff that she wanted to, 'build a new team' and that the Plaintiff, 'didn't have the ability to move in the fast paced environment that she was creating,' plainly evincing an age and disability bias." (*Id.* ¶ 13.)

This claim of immediate *age* discrimination is comprehensible because Harris was 63 or 68 at the time, either of which meets the 40-or-older threshold for age discrimination under the ADEA. *See* 29 U.S.C. § 631(a) ("The prohibitions in [the ADEA] shall be limited to individuals who are at least 40 years of age."). The claim of immediate *disability* discrimination is less comprehensible. The only disability Harris claims arose from medical symptoms she *developed* because of her relationship with Knight, not symptoms that preexisted that relationship. (*Id.* ¶¶ 41, 45–47, 49, 64, 67.)

As to that relationship, Knight at times complained to others about Harris's job performance, criticized Harris personally, micromanaged her, and intentionally assigned her an overwhelming amount of work. (*Id.* ¶¶ 15–17, 20–24, 27, 38–39, 42–43.) On one occasion, she "belittled [Harris] by directing a younger male manager to instruct [Harris] on duties she had been successfully performing for over 9 years." (*Id.* ¶ 18.)

Harris highlights a particular incident, shortly after Knight arrived, when one of Harris's subordinates was accused of coming to work intoxicated. Harris investigated

and provided a "suggested level of discipline" to Knight and "Eric Winters, Human Resource Employee/Labor Relations Specialist." (*Id.* ¶ 19.) Knight and Winters "overturned" Harris's recommendation and imposed "harsher discipline. Thus, deliberately undermining [Harris] as a supervisor in the eyes of the employees reporting to her . . . ." (*Id.*)

Apparently Harris and many of her subordinates were unionized and Harris had some official role with the union. Knight and Winters took steps to ensure that union-related matters bypassed Harris and went to them instead. (*Id.* ¶ 27.)

In August 2016, Harris filed an unfair labor practice charge against Winters "on behalf of [the] employee [that had been accused of coming to work intoxicated], alleging the absence of facts to support the harsher punishment [Knight and Winters imposed]." (*Id.* ¶ 28.) That same month, Harris met with Knight and Winters to discuss "how intolerable it had become for [Harris] to work with Knight." (*Id.* ¶ 30.) Harris asked Winters for assistance in finding another position, and "Winters offered to demote [Harris] to a Floor Nurse position, [but Harris] did not accept as she was not willing to take two steps down and face further humiliation." (*Id.* ¶¶ 30–31.) Around this time, Harris began to seek medical care because the way Knight had been treating her caused "cardiac episodes." (*Id.* ¶ 32.)

In September 2016, Harris and Knight had another confrontation, this one over a hiring decision. Harris was considering candidates, in the midst of which, "Knight abruptly came into [Harris's] office and took the worksheet and everything else [Harris] had been working on regarding the possibility of hiring the daughter of one of the [facility's current nurses]." (*Id.* ¶ 35.) Then Knight "fabricat[ed] a lie regarding [Harris]

4

choosing to hire the daughter of a [current nurse] . . . which was completely false, as the Chief Nurse sends its recommendation to Human Resources for selection since [Harris] is not able to make a selection." (*Id.* ¶ 36.) Harris was soon formally accused of a potential "Prohibited Personnel Practice." (*Id.* ¶ 37.)

In November 2016, Winters interrogated Harris about whether she had filed the unfair labor practice charge (referring back to the employee accused of showing up intoxicated). (*Id.* ¶ 40.) Harris suspected that Winters was acting from a retaliatory motive. (*Id.*)

Also in November 2016, Harris obtained

> a doctor's note . . . which she provided to the VA while requesting a work accommodation due to the stress and hostility she was experiencing from Knight which was resulting in her severe health deterioration and cardiac issues; which request set forth that [Harris] be provided a less stressful environment or a change in position which request was a reasonable accommodation. The Disability was described as [Harris's] inability to sleep, nocturnal teeth grinding, high blood pressure, symptoms of which had been ongoing for 6 months resulting in depression and ultimately leading to a more debilitating condition.

(*Id.* ¶ 41.) The VA denied this request, as explained below.

In early December 2016, Harris had a "cardiac episode" in the middle of a staff meeting and "had to be taken to the hospital." (*Id.* ¶ 45.) On December 21, 2016, she "requested that her Reasonable Accommodation ('RA') be resumed" or "renewed." (*Id.* ¶ 46.) On December 27, 2016, a VA employee informed Harris that the VA had denied her reasonable accommodation request back on December 13, 2016, "because RA does not cover 'preventative' actions." (*Id.* ¶ 47.)

In early January 2017, Winters called Harris to inform her "that there would be charges against [her] for the [Prohibited Personnel Practice, *i.e.*, the alleged choice to

5

hire a nurse's daughter]," as well as charges for "'a couple of issues of misconduct,'" all of which "could lead up to removal." (*Id.* ¶ 48.)

On January 18, 2017, Harris provided the VA with another doctor's note "concerning her need for the reasonable accommodation requested." (*Id.* ¶ 49.) On January 24, 2017, Harris's attorney sent a demand letter to the VA. (*Id.* ¶ 50.) As will become clear in Part IV, below, Harris initiated formal grievance procedures the following month, February 2017. The Court will reserve the details of those grievance procedures for that Part.

While Harris was pursuing grievance procedures, the VA continued to investigate the supposed "Prohibited Personnel Practice." On July 12, 2017, Harris received "a Memorandum for 'Proposed Removal' wherein it list[ed] 4 manufactured and pretextual charges against [Harris], regarding incidents dating back to September 2016." (*Id.* ¶ 54.) The VA terminated Harris on August 3, 2017. (*Id.* ¶ 57.)

Harris filed this lawsuit on January 10, 2018. (ECF No. 1.) She has since amended her complaint twice. (ECF Nos. 21, 28.) Under the Second Amended Complaint (the currently operative complaint) she alleges three claims for relief: (1) disability discrimination in violation of the Rehabilitation Act, based on the VA's refusal to provide a reasonable accommodation (ECF No. 28 ¶¶ 63–70); (2) age discrimination in violation of the ADEA (*id.* ¶¶ 71–77); and (3) unlawful retaliation, nominally for exercising her ADEA and Rehabilitation Act rights (*see id.* at 15 (header to third claim for relief)), but substantively focused on her unfair labor practice charge (*id.* ¶¶ 78–82).

### III.  REGULATORY BACKGROUND

Just as the undisputed facts make little sense without understanding Harris's allegations, they make little sense without understanding regulatory requirements imposed on federal employees seeking redress for on-the-job discrimination.

Discrimination and retaliation claims arising under the ADEA and Rehabilitation Act, among other statutes, "shall be processed in accordance with [29 C.F.R., Part 1614]." 29 C.F.R. § 1614.103(a).  Under the referenced regulations, "Aggrieved persons who believe they have been discriminated against on the basis of . . . age[] [or] disability . . . must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." *Id*. § 1614.105(a).[2]  Moreover, the "aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." *Id*. § 1614.105(a)(1).  If the Counselor's efforts do not resolve the matter, the Counselor ends the informal process and notifies the complaining party of his or her right to file an administrative complaint of discrimination within 15 days. *Id*. § 1614.105(d)–(f).

"A complaint must contain a signed statement from the person claiming to be aggrieved or that person's attorney.  This statement must be sufficiently precise to identify the aggrieved individual and the agency and to describe generally the action(s) or practice(s) that form the basis of the complaint." *Id*. § 1614.106(c).  Complaining parties "may amend a complaint at any time prior to the conclusion of the investigation

---

[2] Apparently the regulations do not define "Counselor."  EEOC guidance defines it as "any agency or contracted employee who, serving as a neutral, provides an aggrieved individual with his/her rights and obligations under equal employment opportunity laws, gathers limited data and may attempt an informal resolution where ADR is not offered or accepted, pursuant to 29 C.F.R. § 1614."  EEOC, *Management Directive 110*, ch. 2, pt. I.A, *available at* https://www.eeoc.gov/federal/directives/md-110_chapter_2.cfm (last accessed Mar. 1, 2019).

to include issues or claims like or related to those raised in the complaint." *Id.* § 1614.106(d).

The agency receiving the complaint must "acknowledge receipt of a complaint or an amendment to a complaint in writing." *Id.* § 1614.106(e). It must dismiss the complaint if it "fails to comply with the applicable time limits." *Id.* § 1614.106(a)(2).

> Where the agency believes that some but not all of the claims in a complaint should be dismissed for [reasons such as untimeliness], the agency shall notify the complainant in writing of its determination, the rationale for that determination and that those claims will not be investigated, and shall place a copy of the notice in the investigative file. A determination under this paragraph is reviewable by an administrative judge if a hearing is requested on the remainder of the complaint, but is not appealable until final action is taken on the remainder of the complaint.

*Id.* § 1614.106(b).

Assuming the agency accepts some or all of the complaint as proper, the agency usually has 180 days to investigate. *Id.* § 1614.108(e)–(f). Eventually, the agency must take "final action," which gives the complaining party (if still unsatisfied) the right to file a lawsuit in federal court. *Id.* § 1614.110.

### IV. UNDISPUTED FACTS

The Court now jumps back to February 2017. The following facts, all of which relate to Harris's pursuit of her grievances through the VA's administrative channels, are undisputed.

Harris first complained to the VA's Office of Resolution Management ("ORM") on February 22, 2017. (ECF No. 30 at 9, ¶ 2.) This was her "initi[tial] contact with a Counselor." 29 C.F.R. § 1614.105(a)(1). She was represented by counsel, and remained represented by counsel throughout the process. (ECF No. 30 at 9, ¶ 2.) It is

8

unclear what the Counselor did in response.

On May 23, 2017, which was within 15 days of the Counselor ending the informal process, Harris filed a formal discrimination complaint with ORM. (*Id.* ¶ 3.) In the "Claim(s)" portion of the complaint form, she wrote as follows:

> Ongoing hostile work environment, harassment, age discrimination in violation of Age Discrimination in Employment Act of 1967, violation of the Americans with Disabilities Act, retaliation for reporting the hostile work environment and harassment, along with retaliation for filing Unfair Labor Practice Charges, intentional infliction of emotional distress.

(ECF No. 30-1 at 15.)

By letter dated July 17, 2017, ORM notified Harris of its "Partial Acceptance" of her complaint. (ECF No. 30-1 at 11.) It then characterized Harris's complaint as "rais[ing] the following claim":

> Whether the complainant was subjected to a hostile work environment based on age and disability as evidenced by the following events:
>
> 1. On December 13, 2017,[3] Piper Knight (PK), Chief Nurse, Geriatrics and Extended Care, denied the complainant's reasonable accommodation request.
>
> 2. On March 3, 2017, Diana Mayeda (DM), Health Systems Specialist, notified the complainant that her request for accommodation had been closed.
>
> 3. On March 8, 2017, PK verbally abused the complainant in the presence of her subordinates and ignored her for the remainder of the meeting.
>
> 4. On April 5, 2017, DM informed the complainant that only the VISN Reasonable Accommodation Coordinator could deny her reasonable accommodation request.
>
> 5. On or about May 25, 2017, PK initiated a fact-finding

---

[3] In a later letter, ORM corrected the year to 2016. (*Id.* at 22 n.3.)

investigation against the complainant.

(*Id.* (footnote omitted).)

The July 17, 2017 letter went on to say that

> **Event 1** [*i.e.*, denial of the reasonable accommodation request] constitutes a discrete act that was not raised within 45 days of occurrence and is therefore **DISMISSED** as an independently actionable claim pursuant to 29 C.F.R. § 1614.107(a)(2) for failing to comply with the regulatory time limits. This event is, however, determined to be sufficiently related to the overall pattern of harassment as they represent actions taken against [you] by the agency and **will be included for consideration in the analysis of the harassment claim**.

(*Id.* at 12 (emphasis in original).) Analyzing "the harassment claim," the letter stated that it "passe[d] the severe or pervasive requirement for further processing." (*Id.*) The letter then continued,

> As outlined above, **Event 1** is **DISMISSED as an untimely independent claim**; however, [it] remains as a harassment event in the hostile work environment claim, and **the overall harassment claim (events 1–5) is ACCEPTED** for investigation. There is no immediate right to appeal the dismissed portion of the complaint. Should [you] decide, [you] will have the right to appeal the partial dismissal once final action is taken by the agency on the remainder of the complaint.
>
> If [you believe] that the accepted claim is improperly formulated, incomplete, or incorrect, this office must receive written notice within **7 calendar days** of receipt of this letter. . . . We will assume that the claim is correctly stated if no statement indicating otherwise is received by this office within **7 calendar days**.

(*Id.* (emphasis in original; paragraph numbers omitted).) Harris never objected that ORM's formulation was improper, incomplete, or incorrect. (ECF No. 30 at 10, ¶ 8.)

On July 26, 2017, and again on August 3, 2017, Harris submitted requests to amend her complaint based on her threatened, and then actual, termination. (ECF No.

10

39 at 11, ¶ 16.) The July 26 request notes that she had received a termination proposal on July 13, which she viewed as "definitive confirmation of harassment and a hostile work environment." (ECF No. 30-1 at 17.) She further stated her belief that it was "a retaliatory action." (*Id.*) The August 3 request forwarded materials related to her actual discharge, without substantive elaboration. (*Id.* at 19.)

On August 11, 2017, ORM issued a "Notice of Amendment" letter. (ECF No. 30-1 at 21.) It added two factual allegations to Harris's previous five allegations:

> 6. On July 13, 2017, Keith Harmon (KH), Associate Director, issued the complainant a proposed removal letter.
>
> 7. On August 3, 2017, Sallie Houser-Hanfelder (SH), Director, issued the complainant a removal letter effective August 9, 2017.

(*Id.* at 22.) This letter reiterated that "Event 1" (from the previous letter) was dismissed as untimely but would nonetheless be considered as part of the factual basis for a hostile environment claim. (*Id.* at 23.) It further noted that "Event 7" was accepted for investigation as a freestanding claim, as well as part of the factual basis for a hostile environment claim. (*Id.*) The letter repeated that dismissal of Event 1 could not be appealed immediately, and that any misformulation of the claims accepted for investigation should be noted in writing within 7 calendar days. (*Id.*) Harris did not inform ORM of any misformulation. (ECF No. 30 at 11, ¶ 15.)

## V. ANALYSIS

**A.     The VA's Acceptance-of-Issues Exhaustion Theory**

The question presented by the VA's summary judgment motion is whether Harris properly exhausted her administrative remedies, or in other words, properly followed the procedure set forth in Part III, above. "[T]he failure to *timely* exhaust administrative

11

remedies . . . is in the nature of a violation of a statute of limitations," and thus bars a lawsuit on the unexhausted claim. *Harms v. IRS*, 321 F.3d 1001, 1009 (10th Cir. 2003) (emphasis in original). "Whether a plaintiff has exhausted administrative remedies is a question of law . . . ." *Id.*

The VA's primary failure-to-exhaust argument hinges on the following premise: "Where claims that a plaintiff seeks to assert in court were not included in the agency's acceptance-of-issues letter, and the employee did not correct the agency's description of the issues, those claims are not exhausted." (ECF No. 30 at 7.) This premise obviously appeals to the VA because, in this case:

- Harris's first cause of action alleges failure to accommodate under the Rehabilitation Act, but she never objected to ORM's dismissal of "Event 1" as an independent claim; and

- Harris's third cause of action alleges retaliation under the Rehabilitation Act and the ADEA, but the cause of action is actually directed at the unfair labor practice dispute and nothing in ORM's second acceptance-of-issues letter (noting the amended claims) addresses that basis, nor did Harris ever object to ORM's formulation of the relevant issues.

According to the VA, Harris needed to act on ORM's statements that "this office must receive written notice within **7 calendar days** of receipt of this letter" if she believed that "the accepted claim is improperly formulated, incomplete, or incorrect." (ECF No. 30-1 at 12, 23; *see also* ECF No. 30 at 12–13.) This is a troubling argument, given that, at least in the context of federal court litigation, it is indistinguishable from an argument that a party who fails to move to reconsider a judge's ruling waives any challenge to the

12

ruling on appeal. This argument is almost always *incorrect* in court, and would seem to be incorrect in the administrative exhaustion context as well, unless the applicable regulations governing this species of exhaustion without question require such a procedure.

Nonetheless, the VA has located some supporting authority for the propositions underlying its position, although none of this authority is binding on this Court. *See, e.g.*, *McKeithan v. Boarman*, 803 F. Supp. 2d 63, 68 (D.D.C. 2011), *aff'd sub nom. McKeithan v. Vance-Cooks*, 498 F. App'x 47 (D.C. Cir. 2013); *Glapion v. Jewell*, 2016 WL 1732685, at *8 (D. Colo. May 2, 2016), *aff'd*, 673 F. App'x 803 (10th Cir. 2016). Moreover, none of this authority addresses what would seem to be an important difference between, on the one hand, agreeing by acquiescence that *accepted* issues have been properly formulated, and, on the other hand, challenging *the failure to accept an issue*, which has its own specific regulation about *when* that decision may be challenged, *see* 29 C.F.R. § 1614.106(b), and for which the acceptance-of-issues letters in this case provided specific instructions consistent with that regulation (*see* ECF No. 30-1 at 12, 23).[4]

---

[4] The Court also has concerns whether the rule motivating the VA's cited cases is consistent with due process. The rule would essentially allow the agency to dictate what it wants to permit the complaining party to exhaust. If the complaining party unmistakably asserts, *e.g.*, discrimination based on sex, age, and national origin, the agency can simply declare that only sex discrimination is at issue and thereby prevent any later lawsuit based on age or national origin discrimination unless the party responds within seven days (an extraordinarily short window of opportunity within which the complaining party may object, and a requirement imposed by letter, not by regulation) challenging that narrowing of the complaint. If the complaining party challenges the agency's formulation and the agency *again* decides that only sex discrimination is at issue, may the agency again say that any disagreement must be stated within seven days? And if so, does failure to seek re-reconsideration constitute abandonment? If not, why did it constitute abandonment the first time around but not the second? If there was a regulation specifically setting forth the duty to seek reconsideration (once, twice, or whatever), the matter might be different. But no such regulation exists.

But the Court need not decide those matters here in light of circumstances specific to this case, noted below.

**B.     Reasonable Accommodation (First Claim for Relief)**

As to Harris's first cause of action (failure to accommodate under the Rehabilitation Act), the record is plain that ORM was correct to refuse to accept the failure-to-accommodate accusation as an independent claim, although for slightly different reasons than ORM itself explained.  The decision to deny the accommodation request was made on December 13, 2016, and ORM stated that Harris failed to initiate the pre-complaint counseling process within 45 days of that event.  (ECF No. 30-1 at 11–12.)  But Harris alleges that she did not learn of the December 13 decision until December 27.  (ECF No. 28 ¶ 47.)  Forty-five days from December 27, 2016, was February 10, 2017, and Harris did not initiate the counseling process until February 22, 2017.  (ECF No. 30 at 9, ¶ 2.)  Although Harris alleges that there was an intervening, additional accommodation request in late January 2017 (ECF No. 28 ¶¶ 49–50), she does not allege that the VA denied this request or that it formed a part of her February 22, 2017 grievance.  Accordingly, Harris failed to exhaust her administrative remedies as to her first cause of action—not because ORM excluded it as a distinct issue and Harris failed to object within 7 days, but because ORM was legally correct to exclude it as untimely.

In her summary judgment response brief, Harris claims that she chose not to challenge ORM's formulation of her issues out of fear of "further delays in the processing of her [grievances]."  (ECF No. 39 at 11, ¶ 15.)  This addresses the argument the Court chooses not to reach in this posture, *i.e.*, whether failure to challenge an agency's formulation of accepted issues waives any challenge to the

14

agency's choice to refuse an issue. Even so, Harris cites no authority for the notion that the complaining party's subjective motivations can make a difference in the exhaustion analysis. The Court therefore ignores her motivations as irrelevant.

Harris also argues that ORM's choice to accept the denial of her accommodation request as evidence of a hostile work environment, if not an independent claim, should be enough to establish exhaustion. In an analogous context, the Supreme Court has rejected this approach. In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ("*Morgan*"), a complaining party filed an EEOC charge alleging discrete acts of race discrimination (and related retaliation) as well as a racially hostile work environment. *Id.* at 104–05. Under the circumstances, the complaining party was required to file his racial discrimination charges with the EEOC within 300 days of the complained-of discrimination or retaliation. *See* 42 U.S.C. § 2000e-5(e). Some of the alleged discrete acts took place more than 300 days before the EEOC charge, but some did not. *Morgan*, 536 U.S. at 106. The Supreme Court rejected a lower court's holding that discrete acts outside that 300-day period are still actionable if sufficiently related to other actions within the 300-day period. *Id.* at 114–15. It held, however, that those discrete acts could still be considered as part of the evidentiary basis for a hostile work environment claim. *Id.* at 116–18. In so holding, it made clear that "[h]ostile environment claims are different in kind from discrete acts." *Id.* at 115.

Although *Morgan* addressed the exhaustion framework at issue in that case, Harris offers no reason, and the Court perceives none, why *Morgan* does not apply with equal strength here. Accordingly, the Court will grant summary judgment in the VA's

favor on Harris's first claim for relief.[5]

**C.     Retaliation (Third Claim for Relief)**

As already noted, the header to Harris's third claim for relief states that she is claiming unlawful retaliation for exercising her ADEA and Rehabilitation Act rights (*see* ECF No. 28 at 15), but its substance focuses on her unfair labor practice charge (*id.* ¶¶ 78–82).  The VA therefore argues that the third claim for relief is based on the unfair labor practice charge, yet none of ORM's acceptance-of-issues letters shows that it accepted for investigation any matter related to the unfair labor practice.  (ECF No. 30 at 12–13.)  Thus, under the same theory advanced above about the binding nature of the acceptance-of-issues letter, the VA argues that Harris failed to exhaust her remedies as to her third claim for relief.  (*Id.*)[6]

The Court expected a response from Harris that at least pointed out one allegation in her third claim for relief that specifically mentions the VA's alleged use of "her age and disability as the motivating factor to retaliate against her."  (ECF No. 28 ¶ 79.)  But Harris instead responds by insisting, without elaboration, that "the facts and circumstances surrounding [the hostile work environment] involving her ULP [*i.e.*, unfair

---

[5] In a footnote at the very end of her response in opposition to the VA's Motion to Dismiss (not her response to the VA's Motion for Early Partial Summary Judgment), Harris asserts her "belie[f]" that the first claim for relief also includes "a Claim of Hostile Work Environment based upon her disability."  (ECF No. 38 at 15 n.3.)  She offers nothing to support this belief, and arguments inadequately developed are forfeited.  *Bronson v. Swensen*, 500 F.3d 1099, 1104–05 (10th Cir. 2007).  In any event, her first claim for relief is plainly a claim of failure to accommodate, not a hostile work environment claim (ECF No. 28 ¶¶ 63–70), and it is not clear she could state a hostile work environment claim based disability-related animus, given her allegation that her disability arose because of the allegedly age-related hostile work environment.

[6] The VA does not argue that charges of retaliation for complaining unfair labor practices fall outside the Rehabilitation Act and the ADEA, and are more properly addressed under the National Labor Relations Act.  *See* 29 U.S.C. § 158(a).

16

labor practice charge], the need to file it, and the harassing interrogation thereafter, are a part of this suit." (ECF No. 39 at 14.)

Regardless, the Court finds that Harris's third claim for relief potentially pleads age-related, disability-related, and labor-related retaliation. As to labor-related retaliation, the Court agrees with the VA that Harris has failed to meet her summary judgment burden to come forth with evidence showing that she informed ORM that the unfair labor practice charge was a potential basis for retaliation, and so she failed to exhaust her administrative remedies. Thus, the Court will grant summary judgment to the VA to the extent Harris's third claim for relief alleges retaliation based on filing an unfair labor practice charge.

The Court will, however, deny summary judgment to the extent the third claim for relief alleges disability-related or age-related discrimination. There is a fair question whether it adequately pleads those forms of discrimination, but that question is better addressed in the context of the VA's pending motion to dismiss, which presents the pleading-adequacy challenge directly. (*See* ECF No. 29.) The Court will address the matter in its order on that motion.

## VI. CONCLUSION

For the reasons explained above, the VA's Motion for Early Partial Summary Judgment (ECF No. 30) is GRANTED with respect to Harris's first claim for relief, and with respect to her third claim for relief to the extent Harris pleads retaliation for engaging in protected activity under labor laws, but DENIED to the extent Harris's third claim for relief pleads retaliation for protected activity under the ADEA and/or the Rehabilitation Act.

17

Dated this 7th day of March, 2019.

BY THE COURT:

_____
William J. Martínez
United States District Judge