IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-0071-WJM-STV

PATRICIA HARRIS,

    Plaintiff,

v.

HON. ROBERT WILKIE of DOD, SECRETARY DEPARTMENT OF VETERANS AFFAIRS, in his Official Capacity,[1]

    Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS, AND *SUA SPONTE* GRANTING LEAVE TO AMEND

Plaintiff Patricia Harris ("Harris") sues the Honorable Robert Wilkie, Secretary of the Department of Veterans Affairs, in his official capacity ("the VA"), alleging disability discrimination under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 791 *et seq.*, age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and retaliation for exercising her rights under those statutes. (ECF No. 28.)

Currently before the Court is the VA's Motion to Dismiss Claims Two and Three ("Motion to Dismiss"). (ECF No. 29.) The VA also challenged Harris's third claim in its Motion for Early Partial Summary Judgment, although on grounds different than those asserted in its Motion to Dismiss. (*See* ECF No. 30.) By order entered earlier today,

---

[1] The parties' pleadings identify Wilkie as the acting secretary of the Department of Veterans Affairs, but he has since been confirmed as secretary. The Court has updated its caption accordingly, and the parties should do so as well.

the Court granted in part and denied in part that portion of the Motion for Early Partial Summary Judgment ("Early Summary Judgment Order," ECF No. 67), in a manner that does not moot the argument the VA makes in its Motion to Dismiss.

For the reasons explained below, the Court denies the Motion to Dismiss with respect to Harris's second claim for relief, but grants it with leave to amend as to Harris's third claim for relief.

## I.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

## II.  FACTS

The Court assumes the following to be true for purposes of the VA's motion to

dismiss.

Harris was born either in 1948 or 1953—the Second Amended Complaint alleges both. (ECF No. 28 ¶¶ 10, 72.) In September 2015, Harris became a "Nurse Manager" at a VA "Community Living Center" in Denver. (*Id.* ¶ 11.) In May 2016, non-party Piper Knight became "Chief Nurse" at that facility. (*Id.* ¶ 12.) "[S]hortly after [Knight's] arrival, [she] told the Plaintiff that she wanted to, 'build a new team' and that the Plaintiff, 'didn't have the ability to move in the fast paced environment that she was creating,' plainly evincing an age and disability bias." (*Id.* ¶ 13.)

This claim of immediate *age* discrimination is comprehensible because Harris was 63 or 68 at the time, either of which meets the 40-or-older threshold for age discrimination under the ADEA. *See* 29 U.S.C. § 631(a) ("The prohibitions in [the ADEA] shall be limited to individuals who are at least 40 years of age."). The claim of immediate *disability* discrimination is less comprehensible. The only disability Harris claims arose from medical symptoms she *developed* because of her relationship with Knight, not symptoms that preexisted that relationship. (*Id.* ¶¶ 41, 45–47, 49, 64, 67.)

As to that relationship, Knight at times complained to others about Harris's job performance, criticized Harris personally, micromanaged her, and intentionally assigned her an overwhelming amount of work. (*Id.* ¶¶ 15–17, 20–24, 27, 38–39, 42–43.) On one occasion, she "belittled [Harris] by directing a younger male manager to instruct [Harris] on duties she had been successfully performing for over 9 years." (*Id.* ¶ 18.)

Harris highlights a particular incident, shortly after Knight arrived, when one of Harris's subordinates was accused of coming to work intoxicated. Harris investigated and provided a "suggested level of discipline" to Knight and "Eric Winters, Human

Resource Employee/Labor Relations Specialist." (*Id.* ¶ 19.) Knight and Winters "overturned" Harris's recommendation and imposed "harsher discipline. Thus, deliberately undermining [Harris] as a supervisor in the eyes of the employees reporting to her . . . ." (*Id.*)

Apparently Harris and many of her subordinates were unionized and Harris had some official role with the union. Knight and Winters took steps to ensure that union-related matters bypassed Harris and went to them instead. (*Id.* ¶ 27.)

In August 2016, Harris filed an unfair labor practice charge against Winters "on behalf of [the] employee [that had been accused of coming to work intoxicated], alleging the absence of facts to support the harsher punishment [Knight and Winters imposed]." (*Id.* ¶ 28.) That same month, Harris met with Knight and Winters to discuss "how intolerable it had become for [Harris] to work with Knight." (*Id.* ¶ 30.) Harris asked Winters for assistance in finding another position, and "Winters offered to demote [Harris] to a Floor Nurse position, [but Harris] did not accept as she was not willing to take two steps down and face further humiliation." (*Id.* ¶¶ 30–31.) Around this time, Harris began to seek medical care because the way Knight had been treating her caused "cardiac episodes." (*Id.* ¶ 32.)

In September 2016, Harris and Knight had another confrontation, this one over a hiring decision. Harris was considering candidates, in the midst of which, "Knight abruptly came into [Harris's] office and took the worksheet and everything else [Harris] had been working on regarding the possibility of hiring the daughter of one of the [facility's current nurses]." (*Id.* ¶ 35.) Then Knight "fabricat[ed] a lie regarding [Harris] choosing to hire the daughter of a [current nurse] . . . which was completely false, as the

4

Chief Nurse sends its recommendation to Human Resources for selection since [Harris] is not able to make a selection." (*Id.* ¶ 36.) Harris was soon formally accused of a potential "Prohibited Personnel Practice." (*Id.* ¶ 37.)

In November 2016, Winters interrogated Harris about whether she had filed the unfair labor practice charge (referring back to the employee accused of showing up intoxicated). (*Id.* ¶ 40.) Harris suspected that Winters was acting from a retaliatory motive. (*Id.*)

Also in November 2016, Harris obtained

> a doctor's note . . . which she provided to the VA while requesting a work accommodation due to the stress and hostility she was experiencing from Knight which was resulting in her severe health deterioration and cardiac issues; which request set forth that [Harris] be provided a less stressful environment or a change in position which request was a reasonable accommodation. The Disability was described as [Harris's] inability to sleep, nocturnal teeth grinding, high blood pressure, symptoms of which had been ongoing for 6 months resulting in depression and ultimately leading to a more debilitating condition.

(*Id.* ¶ 41.) The VA denied this request, as explained below.

In early December 2016, Harris had a "cardiac episode" in the middle of a staff meeting and "had to be taken to the hospital." (*Id.* ¶ 45.) On December 21, 2016, she "requested that her Reasonable Accommodation ('RA') be resumed" or "renewed." (*Id.* ¶ 46.) On December 27, 2016, a VA employee informed Harris that the VA had denied her reasonable accommodation request back on December 13, 2016, "because RA does not cover 'preventative' actions." (*Id.* ¶ 47.)

In early January 2017, Winters called Harris to inform her "that there would be charges against [her] for the [Prohibited Personnel Practice, *i.e.*, the alleged choice to hire a nurse's daughter]," as well as charges for "'a couple of issues of misconduct,'" all

5

of which "could lead up to removal." (*Id.* ¶ 48.)

On January 18, 2017, Harris provided the VA with another doctor's note "concerning her need for the reasonable accommodation requested." (*Id.* ¶ 49.) On January 24, 2017, Harris's attorney sent a demand letter to the VA. (*Id.* ¶ 50.) As described in detail in the Court's Early Summary Judgment Order, Harris initiated formal grievance procedures the following month, February 2017. The Court will reserve the details of those grievance procedures for the Early Summary Judgment Order. They are not relevant to the motion to dismiss.

While Harris was pursuing grievance procedures, the VA continued to investigate the supposed "Prohibited Personnel Practice." On July 12, 2017, Harris received "a Memorandum for 'Proposed Removal' wherein it list[ed] 4 manufactured and pretextual charges against [Harris], regarding incidents dating back to September 2016." (*Id.* ¶ 54.) The VA terminated Harris on August 3, 2017. (*Id.* ¶ 57.)

Harris filed this lawsuit on January 10, 2018. (ECF No. 1.) She has since amended her complaint twice. (ECF Nos. 21, 28.) Under the Second Amended Complaint (the currently operative complaint) she alleges three claims for relief: (1) disability discrimination in violation of the Rehabilitation Act, based on the VA's refusal to provide a reasonable accommodation (ECF No. 28 ¶¶ 63–70); (2) age discrimination in violation of the ADEA (*id.* ¶¶ 71–77); and (3) unlawful retaliation, nominally for exercising her ADEA and Rehabilitation Act rights (*see id.* at 15 (header to third claim for relief)), but substantively focused on her unfair labor practice charge (*id.* ¶¶ 78–82).

### III. ANALYSIS

The VA's motion to dismiss challenges Harris's second and third claims for relief, which the Court will analyze in turn.

### A.     Second Claim for Relief (Age Discrimination)

Harris's second claim for relief alleges two forms of age discrimination: (i) the hostile work environment that existed from the arrival of Knight in May 2016 through Harris's termination in August 2017, and (ii) the termination itself.  (ECF No. 28 ¶ 73.)  The VA argues that Harris has failed to plausibly allege a hostile work environment or a termination motivated by age-based animus.  (ECF No. 29 at 5–10.)  The VA asserts that only two allegations in the complaint have any obvious relevance to age-based animus: (1) the claim that, "shortly after [Knight's] arrival, [she] told [Harris] that she wanted to 'build a new team' and that [Harris] 'didn't have the ability to move in the fast paced environment that she was creating'" (ECF No. 28 ¶ 13 (punctuation normalized)); and (2) the claim that Knight "belittled [Harris] by directing a younger male manager to instruct [Harris] on duties she had been successfully performing for over 9 years" (*id.* ¶ 18).

The Court agrees that these are the only two allegations that suggest age bias on their face.  However, the Court reads the Second Amended Complaint as alleging a campaign of harassment and discrimination as a means to drive out Harris from her position, a campaign alleged to have begun very soon after the two female protagonists to this drama had even met each other.  Indeed, as alleged, Knight made her "fast paced environment" accusation very soon after beginning her employment at Harris's facility, before she had time to make a meaningful performance-based evaluation of Harris.  The Second Amended Complaint therefore plausibly suggests that Knight was

7

carrying out a campaign of discrimination and harassment *because of* age bias, in hopes of driving Harris out. Thus, on the record presented, the hostile work environment portion of Harris's second claim for relief is adequately pleaded.

The VA's argument against the discriminatory termination portion of that claim similarly relies on the notion that there is no plausible connection between the facially age-biased allegations and Harris's termination. Again, however, the Second Amended Complaint plausibly alleges a campaign to drive out Harris based on her age, and so the idea that Harris's termination was also age-motivated is a plausible inference. This portion of Harris's second claim for relief does not fail, and so the VA's motion will be denied as to Harris's second claim for relief.[2]

## B.     Third Claim for Relief (Retaliation)

As already noted, the header to Harris's third claim for relief states that she is claiming unlawful retaliation for exercising her ADEA and Rehabilitation Act rights (*see* ECF No. 28 at 15), but its substance focuses on her unfair labor practice charge (*id.* ¶¶ 78–82). The VA therefore argues that the third claim for relief fails to state a claim because it does not plead retaliation for protected activity under the ADEA or the Rehabilitation Act (ECF No. 29 at 10–11)—as opposed to, presumably, protected activity under federal labor laws.

In the Early Summary Judgment Order, the Court granted summary judgment in the VA's favor to the extent the third claim for relief alleges retaliation for filing the unfair

---

[2] The VA asserts that the Second Amended Complaint is defective as to the discriminatory termination theory because it does not allege that Knight "had any material involvement in the ultimate decision to terminate [Harris]." (ECF No. 29 at 10.) But, for pleading purposes, Knight's connection is a plausible inference given the campaign of harassment and her alleged role in the "Prohibited Personnel Practice" that seems to have been the nominal driving force behind Harris's termination.

labor practice charge, but not to the extent it alleges retaliation for exercising ADEA or Rehabilitation Act rights. The Court explained that the claim might be read as asserting the latter based on this paragraph:

> Defendant made the discriminatory decision to limit, segregate, and classify the Plaintiff in a way which deprived the Plaintiff of employment opportunities and adversely affected her status as an employee, utilizing her age and disability as the motivating factor to retaliate against her by conduct described in [certain paragraphs from the Second Amended Complaint]; and during the Fact Finding concerning her filing of the ULP Charge as described in [other paragraphs from the Second Amended Complaint].

(ECF No. 28 ¶ 79.) Accordingly, the Early Summary Judgment Order does not moot the VA's argument here.

Harris responds by attempting to show that the Second Amended Complaint must be read as implying that she filed the unfair labor practice charge on behalf of her subordinate as a means of protecting herself from age and disability discrimination. (ECF No. 38 at 14–15.) The attempt fails. Even when drawing all reasonable inferences in Harris's favor, the Second Amended Complaint contains nothing to suggest that Harris was so motivated. There is no rational reason why someone would file an unfair labor practice charge on someone else's behalf to protect *herself* from *unrelated* forms of discrimination.

Moreover, candidly, the Court does not understand what Harris is attempting to allege in the above block-quoted paragraph. If the VA "utilize[ed] her age and disability as the motivating factor to retaliate against her," it would appear she is alleging direct discrimination (motivated by the protected characteristic), not retaliation (motivated by complaining about perceived discrimination). Further, the Court does not know what to make of the connection between this alleged "retaliation" and "the Fact Finding

9

concerning her filing of the ULP Charge." It is almost as if Harris is saying that the VA used one potentially unlawful action (retaliation for protected activity under labor laws) as a pretext for another potentially unlawful action (retaliation for asserting age and disability rights). But the Court cannot be sure.

The Court agrees with the VA that Harris has failed to plausibly plead retaliation. In this circumstance, however, the Court finds it in the interest of justice to grant Harris leave to file a third—and final—amended complaint, if she desires, to attempt to allege retaliation motivated by protected activity under the ADEA or the Rehabilitation Act, or both.

## IV. CONCLUSION

For the reasons explained below, the Court ORDERS as follows:

1. The VA's Motion to Dismiss Claims Two and Three (ECF No. 29) is DENIED as to Harris's second claim for relief, and GRANTED WITHOUT PREJUDICE as to Harris's third claim for relief; and

2. If Harris wishes to attempt to re-plead her third claim for relief, she is GRANTED Leave to file a Third Amended Complaint (along with the Notice required by D.C.COLO.LCivR 15.1(a)) on or before **March 20, 2019**.

Dated this 7th day of March, 2019.

BY THE COURT:

William J. Martinez
United States District Judge